No. 2707

Second Circuit

———

PHILLIPS-JONES CORP. v. CASKEY

———

(March 24, 1930. Opinion and Decree.)
(July 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

· ———

William H. Cook, of Shreveport, attorney for plaintiff, appellee.

R. J. O'Neal, of Shreveport, and Huey P. Long, of New Orleans, attorneys for defendant, appellant.

ODOM, J. Plaintiff brought this suit to collect of defendant the sum of $752.66 due on open account. The defendant in answer admitted the correctness of the account, but alleged that the said account had been paid. Enlarging his plea of payment, defendant alleged that there had been a transaction or compromise of the claim at 25 cents on the dollar; and that, in accordance with that transaction and compromise, a check for 25 per cent. of the claim had been sent to and received by defendant.

As the correctness of the account is not disputed, it is necessary to consider only the question whether there was in fact a compromise and settlement of the claim and a payment thereof.

The record discloses that defendant became very much involved and owed considerably more than he was able to pay. His largest creditor employed counsel to investigate conditions and, if possible, to collect its claim. This attorney reached the conclusion, after ascertaining the value of defendant's assets and the amount of his indebtedness, that it would be impossible for any creditor to collect anything like the full amount due, but, on the contrary, was of the opinion that defendant could arrange to pay 25 cents on the dollar of his indebtedness. The attorney was further of the opinion that, if defendant's creditors attempted to force collection of their claims in full, defendant would be forced into bankruptcy, in which event his creditors would get but very little if anything. This attorney, representing his client and not defendant, wrote a letter to each of the creditors, including plaintiff,

in which he detailed the situation as he saw it, and suggested that the creditors agree to accept 25 cents on the dollar in full settlement of their claims. When plaintiff received this letter from the attorney, it turned the same over to its attorneys in New York City, who wrote the attorney in Shreveport that plaintiff's claim had been turned over to them for collection, and that they were willing to co-operate with other creditors in making a settlement which would protect their client's interest. Later on, the attorney in Shreveport, who had been endeavoring to get all creditors to settle, again wrote the attorneys for plaintiff that he had arranged for defendant to pay 25 cents on the dollar, and on April 18, 1924, wrote attorneys for plaintiff as follows:

"April 18, 1924,
"Mr. Harold H. Strauss, 1225 Broadway, New York, N. Y.
"In re: Phillips-Jones Corporation account with Biggest Little Store.

"Gentlemen: We have about arranged to close this matter out now at 25c on the dollar, and everything is in line, with the exception of five or six very small creditors who have given us considerable trouble over nothing. We hope to have them in line within a few days.

"Please give me written authority to settle this matter off with this debtor and discharge him of further liability to you upon payment of 25c on the dollar. Upon receipt of this instruction I hope to be able to close out with you and the balance of the creditors and send you checks. My fees are being paid by the principal creditors, so there will be no charges against you.

"Sincerely yours,
"Huey P. Long."

Plaintiff's attorneys made no reply to this letter, but on May 24, 1924, the attorney in Shreveport who, as stated, was representing the largest creditor of defend-

ant and not the defendant himself, wrote plaintiff's attorneys in New York, inclosing his personal check for $188.07, which was 25 per cent. of plaintiff's claim, stating, "which is payment in full of your account against the Biggest Little Store for $752.30." When this letter and the check were received by the attorneys, they delivered them to plaintiff who, after keeping the check for a few days, returned it with a letter stating that the settlement was not satisfactory and that suit would be instituted for the collection of the full amount of the claim.

There is no testimony at all to show that plaintiff at any time agreed to accept less than the full amount of its claim. It is argued, however, that plaintiff's attorneys did agree to compromise the claim. However, a reading of the letters written by plaintiff's attorneys to the attorney in Shreveport discloses that the attorneys themselves did not agree to accept the proposed settlement of 25 cents on the dollar. In reply to the letter of March 4th, in which the attorney in Shreveport informed all creditors that a settlement of 20 or 25 cents on the dollar could be obtained, plaintiff's attorneys wrote the attorney in Shreveport that said letter had been turned over to them by their client and that they were willing to co-operate with him in any plan he might have to protect their client's interest. Again, on April 14th, plaintiff's attorneys wrote the attorney in Shreveport asking for further information, and stating that "we are willing to co-operate with you in any plan you may have to protect client's interest." From these letters the attorney in Shreveport, who was trying to make settlement for his client, who was the largest creditor, inferred, it seems, that plaintiff was willing to accept the settlement offered.

The letters referred to, written by plaintiff's attorneys, cannot, we think, be construed to mean that they unqualifiedly agreed that their client's claim should be settled on that basis, and, as we have already stated, it is certain that plaintiff itself did not agree to make such settlement; and it is also made clear that plaintiff did not authorize its attorney, either in writing or otherwise, to make the settlement. There was never any communication between plaintiff or its attorneys and defendant, but all correspondence was carried on between plaintiff's attorneys and an attorney for other creditors; the purpose of the attorney in Shreveport who represented this large creditor being to effect a transaction or compromise between the creditors and the defendant.

"A contract of compromise must be reduced to writing." Civil Code, art. 3071.
"A man to transact must have the capacity to dispose of the things included in the transaction." Civil Code, art. 3072.

Even if it be said that plaintiff's attorneys did agree to the settlement, the fact remains that they had no authority from their client to make such settlement. An attorney has no right to compromise his client's claim without express authority to do so. Liquidators of Jos. David Co. vs. Berthelot Bros., 118 La. 380, 42 So. 971; Culverhouse et al. vs. Jacob Marx, 39 La. Ann. 809, 2 So. 607; Orr & Lindsey vs. Wm. Hamilton, 36 La. Ann. 790.

It is true, however, that a settlement made by attorneys for their client is binding if ratified by receipt and acceptance of the amount agreed upon. But the testimony in this case shows that, when the check for 25 per cent. of the claim was forwarded to plaintiff, it refused to accept it and returned it.

There was judgment in the lower court for the amount sued for, and we think that judgment is correct; it is accordingly affirmed, with all costs in both courts.